No. 12-4659

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA,
　　　　　　　　　　　*Plaintiff/Appellee*,

v.

AARON GRAHAM and ERIC JORDAN,
　　　　　　　　　　　*Defendant/Appellant*.

_____

On Appeal from the United States District Court
for the District of Maryland, Northern Division
(The Honorable Richard D. Bennett)

_____

## SUPPLEMENTAL BRIEF OF APPELLANTS

_____

| | |
|---|---|
| **JAMES WYDA** | **RUTH VERNET** |
| Federal Public Defender | Ruth J. Vernet Esq., LLC |
| **MEGHAN S. SKELTON** | |
| Appellate Attorney | 31 Wood Lane |
| 6411 Ivy Lane, Suite 710 | Rockville, MD 20850 |
| Greenbelt, Maryland 20770 | (301) 251-9500 |
| (301) 344-0600 | |
| | |
| *Counsel for Aaron Graham* | *Counsel for Eric Jordan* |

## TABLE OF CONTENTS

Page

Table of Authorities............................................................... iii

ARGUMENT........................................................................ 1

    I.    *RILEY v. CALIFORNIA* HOLDS THAT INDIVIDUALS ENJOY A WEIGHTY PRIVACY INTEREST IN CELL PHONE METADATA, INCLUDING CSLI................... 1

    II.   *RILEY* SHOWS THAT THE THIRD PARTY DOCTRINE DOES NOT REDUCE THE CONSTITUTIONAL PROTECTION FOR CSLI............................... 4

    III.  THE FOURTH AMENDMENT PROTECTS CSLI AND THE GOVERNMENT MUST OBTAIN A WARRANT TO ACCESS IT.................................... 9

Conclusion........................................................................ 10

Certificate of Service

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bond v. United States*, 529 U.S.334 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Commonwealth v. Augustine*, 4 N.E.3d 846 (Mass. 2014). . . . . . . . . . . . . . . *passim*

*Elkins v. United States*, 364 U.S. 206 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ferguson v. City of Charleston*, 532 U.S. 67 (2001). . . . . . . . . . . . . . . . . . . . 6, 7

*In re Application*, 620 F.3d 304 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Klayman v. Obama*, 957 F. Supp. 2d 1 (D.D.C. 2013). . . . . . . . . . . . . . . . . . . . 7

*Kyllo v. United States*, 533 U.S. 27 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Marvin v. United States*, 732 F.2d 669 (8th Cir. 1984). . . . . . . . . . . . . . . . . . . . 9

*Maryland v. King,* 133 S. Ct. 1958 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ontario v. Quon*, 560 U.S. 746 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Riley v. California*, 134 S. Ct. 2473 (2014). . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Smith v. Maryland*, 442 U.S. 735 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6

*State v. Earls*, 70 A.3d 630 (N.J. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 9

*Stoner v. California*, 376 U.S. 483 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tennessee v. Garner*, 471 U.S. 1 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Davis,* __F.3d __, 2014 WL 2599917 (11th Cir. 2014). . . . . *passim*

*United States v. Jones*, 132 S. Ct. 945 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010). . . . . . . . . . . . . . . . . . . . 3

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2011). . . . . . . . . . . . . . . . . . . 7, 9

*United States v. Watson*, 423 U.S. 411 (1976) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989). . 4, 6

## Statutes and Rules

18 U.S.C. § 2703. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Colo. Rev. Stat. § 16-3-303.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Me. Rev. Stat. Ann. tit. 16, § 648. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Minn. Stat. § 626A.42. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mont. Code Ann. § 46-5-110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Utah Code Ann. § 77-23c-102. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Wis. Stat. § 968.373. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# ARGUMENT

I. *RILEY v. CALIFORNIA* HOLDS THAT INDIVIDUALS ENJOY A WEIGHTY PRIVACY INTEREST IN CELL PHONE METADATA, INCLUDING CSLI

No longer can any doubt remain that individuals have a reasonable expectation of privacy protected by the Fourth Amendment in cell phone location data. In a rare unanimous Fourth Amendment decision, *Riley v. California* explained that cell phones "hold for many Americans the privacies of life." 134 S. Ct. 2473, 2495 (2014) (citation and internal quotation marks omitted). The Court focused on individuals' strong privacy interest in the information that their cell phones reveal about them – concerns that are not limited to the warrant exception at issue, searches incident to arrest. The Court declared without qualification that "[m]odern cell phones, *as a category*, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse."[1] *Id.* at 2488 (emphasis added).

---

[1] Commentators agree that *Riley*'s holding extends well beyond the particular warrant exception at issue. Legal scholars have widely characterized the holding as sweeping, and one that will have broad implications in other areas. *See, e.g.*, Marc Rotenberg & Alan Butler, *Symposium: In* Riley v. California*, A Unanimous Supreme Court Sets out Fourth Amendment for Digital Age*, SCOTUSblog (June 26, 2014), http://www.scotusblog.com/2014/06/symposium-in-riley-v-california-a-unanimous-supreme-court-sets-out-fourth-amendment-for-digital-age ("The Court's conclusion that *data is different* will affect not only digital search cases, but also the NSA's bulk record collection program, access to cloud-based data, and the third-party doctrine." (emphasis in original)); Adam Liptak, *Major Ruling Shields Privacy of Cell Phones*, New York Times (June 25, 2014), http://www.nytimes.com/2014/06/26/us/supreme-court-cellphones-search-privacy.html ("While the decision will offer protection to the 12 million people arrested every year, many for minor crimes, its impact will most

Historical location data generated by cell phones served as one of the Court's chief examples of "the privacies of life" that cell phone metadata exposes. The Court described just how intimate and detailed location data is: "Data on a cell phone can also reveal where a person has been. Historic location information . . . can reconstruct someone's specific movements down to the minute, not only around town, but within a particular building." *Id.* at 2490.

*Riley*, like the three most recent CSLI decisions, thus recognized that analyzing CSLI allows the government to retroactively track a person into a home[2] or other protected space. *Id.* "Even one point of [CSLI] can be within a reasonable expectation of privacy." *United States v. Davis*, __ F.3d __, 2014 WL 2599917 *8 (11th Cir. 2014). Because cell phones accompany users into private space, "the exposure of the cell site location information can convert what would otherwise be a private event into a public one." *Id. See also Commonwealth v. Augustine*, 4 N.E.3d 846, 864 (Mass. 2014) (noting that, because people carry cell phones on their person, "CSLI clearly has the potential to track a cellular telephone user's location in constitutionally protected areas."); *State v. Earls*, 70 A.3d 630, 642 (N.J. 2013) ("Modern cell phones also blur the historical distinction between public and private

---

likely be much broader.").

[2] The Court actually characterized a cell phone search as *more* invasive than a search of a home. *Id.* at 2491.

2

areas because cell phones emit signals from both places.").[3]

The Court explained the intrusive nature of tracking someone using CSLI by adopting Justice Sotomayor's concurrence in *United States v. Jones*, 132 S. Ct. 945, 955 (2012). The unanimous Court thus concluded that generating and monitoring "a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations" infringes upon an individual's reasonable expectation of a privacy that is protected by the Fourth Amendment. *Riley*, 134 S. Ct. at 2490.

Elsewhere, *Riley* also adopted the mosaic theory of privacy explained in *United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010), and approved by Justices Sotomayor and Alito in their *Jones* concurrences. Combined data can reveal a person's entire private life. "A cell phone collects in one place many distinct types of information . . . that reveal much more in combination than any isolated record." 134 S. Ct. at 2489. The Court explained that aggregating then analyzing this data intrudes upon a protected privacy interest: "The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet." *Id.* Accordingly, although the decision did not turn on

---

[3] Indeed in *Earls*, the relevant location data placed the defendant inside a hotel room, unquestionably private space protected by the Fourth Amendment.

3

aggregating data in order to identify a privacy interest, the Court recognized that aggregating data implicates a reasonable expectation of privacy.[4]

*Riley* thus establishes that analyzing historic CSLI allows the government to cross the threshold of constitutionally protected space and to recreate an intimate picture of an individual's life. The unanimous Court recognized a reasonable expectation of privacy in both. Accordingly, when the government collects and analyzes this data, it conducts a search. Doing so, as it did here, without a warrant is unreasonable under the Fourth Amendment.

## II. *RILEY* SHOWS THAT THE THIRD PARTY DOCTRINE DOES NOT REDUCE THE CONSTITUTIONAL PROTECTION FOR CSLI

*Riley* "rejected" the government's suggestion that the third-party doctrine described in *Smith v. Maryland*, 442 U.S. 735 (1979), justified the search of cell phone data. 134 S. Ct. at 2492. A careful reading of *Riley* demonstrates that this Court should likewise reject the government's suggestion that *Smith* eliminates Fourth Amendment protection to historical CSLI in this case.

The government's concession in *Riley* that a search had occurred enabled the Court to avoid fully reconsidering *Smith*. *Riley*, 134 S. Ct. at 2492. Nevertheless, the

---

[4] *Davis*, *Augustine*, and *Earls* also concluded that analyzing aggregated location data implicated a privacy interest. *See Davis*, 2014 WL 2599917 at *6 (approving the mosaic theory and noting that the government often relies on that theory to establish that aggregated data is far more revealing than the sum of its parts); *Augustine*, 4 N.E.3d at 864; *Earls*, 70 A.3d at 641-43; *See also DOJ v. Reporter's Committee for Freedom of the Press*, 489 U.S. 749, 763, 766 (1989).

4

Court seized the opportunity to explain that the pen register in *Smith* bore little relationship to the phone data being mined by the government. Regarding an old-fashioned flip phone, the Court noted that a cell phone's call log (and thus its metadata) "contained more than just phone numbers" and included substantial personal identifiers, rendering a case about pen registers of little utility in deciding the Fourth Amendment question. *Id.* at 2493.

*Riley* essentially limited *Smith* to its facts and distinguished those facts from cell phone data. Similarly, all three of the last CSLI cases distinguished *Smith*. For example, *Augustine* details the gulf between the limited information available from a pen register and CSLI. 4 N.E.3d at 862-63. Instead of a simple list of dialed phone numbers – the exact information knowingly conveyed by a land-line telephone customer – CSLI encompasses "very detailed and extensive information about the individual's comings and goings." *Id.* No cell phone user identifies a discrete CSLI data point and transmits it to the service provider; rather, from the individual's perspective, CSLI is "unknown and unknowable." *Id.* Similarly, *Davis* found *Smith* inapplicable because cell phone users do not knowingly and voluntarily convey location data, unlike dialed telephone numbers. 2014 WL 2599917 at *9.[5] Since cell phone users do not knowingly and intentionally disclose CSLI, *Smith* does not apply.

---

[5] The Eleventh Circuit adopted the reasoning of the Third Circuit in *In re Application*, 620 F.3d 304 (3d Cir. 2010).

5

The government continues encouraging the Court to extend *Smith* whenever an individual shares or discloses some information–or at least fails to maintain absolute secrecy–but time and again, the Supreme Court refuses. *See Ontario v. Quon*, 560 U.S. 746 (2010) (assuming a privacy interest in text messages sent on a government-owned phone); *Kyllo v. United States*, 533 U.S. 27 (2001) (finding a privacy interest in location data, although partially observable to the public), *Feguson v. City of Charleston*, 532 U.S. 67 (2001) (finding a privacy interest in the result of medical information, despite the fact that the individuals disclosed the information to hospital personnel); *Bond v. United States*, 529 U.S.334, 336 (2000) (exposing a bag to the public does not eliminate an expectation of privacy). *See also Reporter's Committee*, 489 U.S. at 764 n.16 (since almost every highly personal fact is known to someone other than the person who enjoys the privacy interest,"meaningful discussion of privacy, therefore, requires the recognition that ordinarily we deal not with an interest in total nondisclosure but with an interest in selective disclosure.")

Even if disclosure to a third party diminishes an individual's privacy interest, *Riley* explicitly holds that "diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely." 134 S. Ct. at 2488. "To the contrary, when 'privacy-related concerns are weighty enough' a 'search may require a warrant notwithstanding the diminished expectations of privacy.'" *Id.* (quoting *Maryland v. King*, 133 S. Ct. 1958, 1979 (2013)). That is precisely the case with cell phone data.

6

Even if this Court were to ignore the three most recent CSLI decisions, each of which found that cell phone users did not voluntarily convey location information to a third party, *Riley* nevertheless establishes that the heft of the privacy interest at issue with CSLI demands continued application of the Fourth Amendment and its warrant requirement.

*Riley* also demonstrates that the government cannot evade the warrant requirement based on a claim that CSLI is a business record. *Riley's* discussion of the privacy interest encompassed data kept on a business's server, not just data maintained on the device itself. Cell phone users retain a reasonable expectation of privacy in data housed on a business's servers. Cell phone users do not necessarily know what data resides on the device and what data is stored in the cloud "and it generally makes no difference" to the privacy interest. *Id.* at 2491.

Even if data is actually located on a business's server, individuals retain a privacy interest; it is still the individual's "effects" despite being stored remotely on a computer owned by a business.[6] *Id.* Service providers have access to CSLI "purely

---

[6] The government also cannot claim that CSLI is a business record because the business has an independent interest in retaining historic CSLI. As discussed in the Reply Brief, the excessive entanglement of law enforcement with telecommunications providers establishes that obtaining this information is a search. *See Feguson*, 532 U.S. at 82-84; *Klayman v. Obama*, 957 F. Supp. 2d 1, 33 (D.D.C. 2013). Sprint's own billing practices belie a business interest in maintaining historical CSLI. It collects a separate fee to defray the costs of complying with its regulatory burdens, including providing the government location data on its customers; the business obviously does not see providing this

7

as a function and product of cellular telephone technology."[7] *Augustine*, 4 N.E.3d at 862. Cell phone users do not grant service providers the right to rummage through their personal data. Access to it does not transform the data into a business record instead of an individual's personal papers and effects. *See United States v. Warshak*, 631 F.3d 266, 286-88 (6th Cir. 2011); *see also Stoner v. California*, 376 U.S. 483, 488-89 (1969) (explaining that limited access to property does not include blanket authority to consent to search).

Moreover, the most recent discussion of CSLI likens it to content because it is so revealing: "cell site data is more like communications data than it is like GPS information. That is, it is private in nature rather than being public data that warrants privacy protection only when its collection creates a sufficient mosaic to expose that which would otherwise be private." *Davis*, 2014 WL 2599917 at *8. Because CSLI is essentially communications content stored like a bailment, the government can

---

information as covered within the core service it offers its customers. *See* http://support.sprint.com/support/article/Know_about_Sprint_surcharges_taxes_fe es_and_other_charges/case-ib376964-20090810-135914; *see also* http://www.wireless.att.com/cell-phone-service/ additionalcharges/index.jsp?_ requestid=552052.

[7] *Riley* discussed the differences between cell phone data and physical evidence, referring to the same scientific article Appellants cited at pages 65-67 of their Opening Brief. 134 S. Ct. at 2486-87; Dept. of Commerce, National Institute of Standards and Technology, R. Ayers, S. Brothers, & W. Jansen, Guidelines on Mobile Device Forensics (Draft) 29, 31 (SP 800–101 Rev. 1, Sept. 2013). Ayers describes forensic examinations of cell phone data as a "science" that is a "specialty in the field of digital forensics."

8

obtain CSLI from service providers only with a warrant. *See Warshak*, 631 F.3d at 286-87. A bailment is not transformed into a business record simply because of the storage location. *See Marvin v. United States*, 732 F.2d 669, 675-76 (8th Cir. 1984).

III. THE FOURTH AMENDMENT PROTECTS CSLI AND THE GOVERNMENT MUST OBTAIN A WARRANT TO ACCESS IT

In the six months preceding *Riley*, three appellate decisions considered applications for historical CSLI under 18 U.S.C. § 2703(d), and all held that these warrantless searches of CSLI violate the Constitution. *Davis*, 2014 WL 2599917 at *10; *Augustine*, 4 N.E.3d at 865-66; *Earls*, 70 A.3d at 644. These decisions presage much of the reasoning the Supreme Court used in *Riley*.

Not only is the trend in appellate courts clear,[8] but also instructive[9] is the fact that state legislatures have been taking steps to provide additional privacy protection for cell phone customers' location data. In the last two years, six states have enacted statutes requiring law enforcement to obtain warrants before obtaining historical or real-time cell site location information. *See* 2014 Colo. Legis. Serv. Ch. 395 (West) (codified at Colo. Rev. Stat. § 16-3-303.5); 2013 Me. Legis. Serv. Ch. 409 (West)

---

[8] As discussed in the Opening and Reply briefs, this trend began years ago, rendering the good faith exception unavailable to the government here.

[9] "In evaluating the reasonableness of police procedures under the Fourth Amendment," the Supreme Court has often "looked to prevailing rules in individual jurisdictions." *Tennessee v. Garner*, 471 U.S. 1, 15–16, 18 & n.21 (1985) (citing *United States v. Watson*, 423 U.S. 411, 421–22 (1976)); *see also Elkins v. United States*, 364 U.S. 206, 219 (1960) (looking to states' practices in determining scope of Fourth Amendment's exclusionary rule).

9

(codified at Me. Rev. Stat. Ann. tit. 16, § 648); 2014 Minn. Sess. Law Serv. Ch. 278 (West) (codified at Minn. Stat. § 626A.42); 2013 Mont. Laws Ch. 394 (codified at Mont. Code Ann. § 46-5-110); 2014 Utah Laws Ch. 223 (codified at Utah Code Ann. § 77-23c-102); 2013 Wisc. Act 375 (codified at Wis. Stat. § 968.373). No state has relaxed the standards for law enforcement to obtain CSLI.

*Riley*, the three most recent CSLI cases, and the new state laws illustrate the existence of a reasonable expectation of privacy in CSLI, and that cell service providers' access to that information does not vitiate the privacy interest. This Court should position itself on the right side of history, holding the government to its constitutional obligations.[10] "Get a warrant." *Riley*, 134 S. Ct. at 2495.

                                      JAMES WYDA
                                      Federal Public Defender
                                      District of Maryland

                                      /s/
                                      MEGHAN S. SKELTON
                                      Appellate Attorney
                                      6411 Ivy Lane, Suite 710
                                      Greenbelt, Maryland 20770
                                      Telephone: (301) 344-0600
                                      *Counsel for Appellant*

---

[10] As *Riley* describes, the information is not immune from search – the government just must seek a warrant. "Our cases have historically recognized that the warrant requirement is an important part of the our machinery of government, not merely an inconvenience to be somehow weighed against the claims of police efficiency." 134 S. Ct. 2493 (internal quotation omitted).

## **CERTIFICATE OF SERVICE**

This is to certify that on this 18th day of July, 2014, a copy of the foregoing Supplemental Brief of Appellant was filed electronically through CM/ECF, which automatically sends notice of such filing to the following registered CM/ECF user:

>Benjamin Block, Esq.
>Assistant U.S. Attorney
>Office of the U.S. Attorney
>36 South Charles St., 4th Floor
>Baltimore, Maryland 21201

/s/_____
Meghan S. Skelton
Appellate Attorney